Per Curiam

*811 TEXTO COMPLETO DE LA SENTENCIA
Don Roberto Buso Aboy, su esposa, doña María Milagros del Socorro García Cárdenas, y la sociedad legal de gananciales constituida por ambos, apelan de una sentencia sumaria dictada por el Tribunal de Primera Instancia, Sala de San Juan, en la cual se ordena la venta en pública subasta de un inmueble de su propiedad que garantiza un pagaré del cual es tenedor el demandante aquí apelado, Banco Santander de Puerto Rico. Los apelantes señalan que el tribunal apelado dictó sentencia sumaria a pesar de que existe una controversia sobre la intención de las partes al suscribir un contrato de cesión el 15 de mayo de 1997, y planten que esto constituye una controversia de hecho que impedía que se dictara sentencia sumariamente. Para dilucidar este planteamiento, procede hacer una breve relación del contexto procesal en que se dicta la sentencia sumaria cuya revisión se solicita.
I
El Banco Santander de Puerto Rico presentó una demanda en cobro de dinero, ejecución de prenda y ejecución de hipoteca, contra los aquí apelantes. Posteriormente, presentó una moción en la que solicitó que se dictara sentencia sumaria a tenor con lo establecido en la Regla 36 de las de Procedimiento Civil. El tribunal apelado le concedió a los demandados-apelantes un plazo de 30 días para presentar oposición a esa moción. Luego de transcurrir 90 días sin que los apelantes presentaran su oposición, el Banco Santander reiteró su solicitud. Ante tal solicitud, el tribunal apelado dictó la sentencia sumaria cuya revisión se solicita, en la que hizo las siguientes determinaciones de hecho, sobre las cuales concluyó que no existe controversia:

“1. Con fecha de 29 de septiembre de 1995, el codemandado Roberto Buso Aboy y su esposa Marilyn García Cárdenas, por concepto de préstamo, libraron pagaré a la orden del Banco Central Hispano de Puerto Rico por la suma principal de $115,954.52, devengando intereses a razón del 1% sobre la taza preferencial de interés fluctuante, el cual cambiará de tiempo en tiempo, según cambie la tasa preferencial, pagadero en seis mensualidades consecutivas de $600.00 a principal más intereses, 17 mensualidades consecutivas de $1,000.00 a principal más intereses y un último plazo de $95,954.52 a principal más intereses sobre el balance adeudado. Surge de los documentos sometidos que la parte demandante es tenedora por endoso y por causa suficiente del pagaré antes relacionado.

Por concepto de dicha obligación, la parte demandada adeuda solidariamente a la parte demandante la suma principal de $115,954.52, intereses sobre dicha suma que al día 27 de mayo de 1998, ascienden a la suma de $29,798.24 y los que de ahí en adelante se acumulen al tipo pactado hasta su total y completo pago, más la suma de $11,595.45 por concepto de costas, gastos y honorarios de abogado.

*812
2. La parte demandada incumplió el pago de la obligación antes relacionada, al dejar de pagar el principal más los intereses, no obstante los requerimientos hechos por la parte demandante, por lo que la parte demandante declaró acelerado y vencido el pago total de dicha obligación.

3. Para el pago de las sumas adeudadas, el 15 de mayo de 1997, la parte demandada suscribió un Contrato de Cesión, el cual, a pesar de los requerimientos de la parte demandante, no ha sido cumplido por la parte demandada.

4. Con fecha de 28 de septiembre de 1995, la parte demandada suscribió Contrato de Prenda, bajo Afidávit Núm. 19,229 ante el Notario José Quiñones Elias y entregó en prenda y como garantía de esta obligación Pagaré Hipotecario por la suma principal de $100,000.00, a la orden del portador, devengando intereses al 8% anual, con vencimiento a la presentación, garantizado con Primera Hipoteca constituida por Escritura Número 6 de fecha 24 de febrero de 1988 ante el Notario Público José Quiñones Elias, inscrita al Folio 245 del Tomo 485 de Santurce Norte, el cual grava la propiedad inmueble que se describe a continuación:

“URBANA: Solar radicado en el sitio El Condado, Sección Norte del Barrio de Santurce de la ciudad de San Juan, Puerto Rico, con un área de TRESCIENTOS SETENTA Y SEIS METROS NOVENTA Y CINCO CENTIMETROS CUADRADOS. Colinda por el NORTE, en veinte y seis metros cuarenta centímetros con Antonio Jiménez; por el SUR, en diez y seis metros noventa y siete centímetros con solar de Emma Cuyar de Muñoz y nueve metros cincuenta y cuatro centímetros, con solar de Carmen Cuyar de Chardón; por el ESTE, en catorce metros veinte y seis centímetros, también con solar de Carmen Cuyar de Chardóny por el centro de una pared medianera de los garajes de las respectivas propiedades, y por el OESTE, que es su frente, en catorce metros veinte y seis centímetros, con la Avenida Washington.

Contiene una casa de dos plantas, de concreto armado, dedicada a vivienda, con cuarto para el servicio aparte, que lleva el número setenta y cinco de la Avenida Washington.

Inscrita al Folio 245 del Tomo 485 de Santurce Norte, Finca Núm. 13,796.

La parte demandada es la titular de la antes descrita propiedad habiendo adquirido la misma según consta de la Escritura Número 45 otorgada en San Juan, P.R., el día 30 de diciembre de 1974 ante el Notario Público Raúl Tirado Rodríguez.

5. La escritura de hipoteca anteriormente relacionada se encuentra debidamente inscrita, según surge de estudio de título presentado por la parte demandante.

6. Sobre esta propiedad se encuentran inscritos los siguientes gravámenes:

“EMBARGO por la suma principal de $21,971.13 para responder al Estado Libre Asociado de Puerto Rico por contribuciones sobre ingresos adeudadas por Roberto Buso Aboy, según certificación de 11 de enero de 1994, anotado al Folio 60 del Tomo 109 de Embargos Estatales. ”

“EMBARGO FEDERAL por la suma principal de $4,502.00 para responder a los Estados Unidos de América por Contribuciones Federales, adeudadas por Roberto Buso Aboy, según notificación #6695-02471, anotada al Polio 60 del Tomo 5 de Embargos Federales, al Asiento #2. ”

7. Se incluyó al Estado Libre Asociado de Puerto Rico, y el Departamento de Hacienda en la presente 
*813
demanda, por ser partes interesadas en relación a los gravámenes posteriores que afectan la propiedad descrita en el párrafo “6” de esta demanda, así como a los Estados Unidos de América, según lo dispone la Ley Federal vigente, USCA 2410. ”

Basándose en tales determinaciones de hecho, el tribunal apelado declaró que los apelantes están solidariamente obligados a pagarle al Banco Santander la suma de $115,954.52; una suma en intereses que al día 27 de mayo de 1998 equivale a $29,798.24 y los que de ahí en adelante se acumulen al tipo pactado hasta su total y completo pago; más la suma de $11,595.45 por concepto de costas, gastos y honorarios de abogado. Además dispuso que, una vez la sentencia sea firme, los demandados aquí apelantes no han pagado las partidas garantizadas por hipoteca, el Alguacil deberá proceder con la venta en pública subasta del pagaré hipotecario y la propiedad inmueble que lo garantiza.
II
Junto a su moción de sentencia sumaria, el Banco Santander sometió un pagaré, un contrato de prenda, un pagaré hipotecario y una declaración jurada del señor Gilberto López Santiago, Vicepresidente de la Unidad de Activos Irregulares del Banco Santander, en los que se establece con claridad su derecho a exigir el cumplimiento de la obligación contraída por los apelantes y a solicitar la venta en pública subasta del inmueble otorgado como garantía hipotecaria de esa obligación. En su contestación a la demanda, los demandados aquí apelantes admitieron haber suscrito tales documentos. Por otra parte, los apelantes nunca se opusieron a la moción de sentencia sumaria con declaraciones juradas o cualquier otra prueba documental que demostrara una intención distinta a la que surge del contrato de cesión que se otorgó el 15 de mayo de 1997. En este contexto procesal, el planteamiento sobre la intención de las partes al suscribir el contrato de cesión tiene que circunscribirse a la interpretación de los términos del contrato de cesión de crédito. La interpretación de los términos de un contrato no constituye una disputa de hechos que deba ser dirimida en un juicio plenario, sino una cuestión de derecho susceptible de dilucidarse mediante sentencia sumaria. Al aplicar el derecho, los tribunales están facultados para interpretar los términos de un contrato y dictar sentencia sumaria conforme a ello. Ocasio v. San Juan Dock Co., 75 D.P.R. 930 (1954).
El Artículo 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3471, establece que cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, las partes estarán obligadas por el sentido literal de sus cláusulas. Las cláusulas de los contratos se deben interpretar las unas por las otras, atribuyendo a las cláusulas dudosas el sentido que resulte del conjunto de todas. Artículo 1237 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3475. Por otra parte, el Artículo 1120 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3170, establece que el deudor de una cosa no puede obligar a su acreedor a que reciba otra diferente, aun cuando fuere de igual o mayor valor que la debida. Sin embargo, nada impide que el acreedor y el deudor se pongan de acuerdo para que el pago pueda verificarse mediante otra prestación. En ese caso, el acreedor tiene que aceptar la suma que se le entrega y manifestar su conformidad en que se produzca la extinción de su derecho de crédito, sin buscar ninguna adecuación o igualdad entre el valor de lo que recibe y lo que tenía que recibir. Esto es lo que la doctrina tradicional denomina como la dación en pago. Para que exista una dación en pago se tienen que cumplir los siguientes requisitos: 1) una obligación líquida preexistente que se quiere extinguir; 2) un acuerdo de voluntades entre acreedor y deudor en el sentido de considerar extinguida la antigua obligación a cambio de la nueva prestación; 3) una prestación realizada con intención de efectuar un pago total y definitivo. Puig Brutau, Fundamentos de Derecho Civil: Derecho General de las Obligaciones, 3ra ed., Barcelona, Bosch, Vol II, Tomo I, pág. 322.
El tribunal apelado no erró en su interpretación del contrato de cesión de crédito suscrito por las partes. Los apelantes plantean que ese contrato de cesión realmente constituyó una dación en pago que sustituyó la garantía hipotecaria. Sin embargo, en la Cláusula Segunda del Contrato de Cesión, los demandados aquí *814 apelantes reconocieron que el Banco Santander es el tenedor de un pagaré hipotecario en prenda y como garantía del pago de la obligación. En ninguna de las cláusulas del contrato de cesión, el Banco Santander acordó dejar sin efecto la garantía hipotecaria. Tampoco surge del contrato de cesión que el Banco Santander haya accedido a devolver la garantía a cambio de la cesión de créditos. Por el contrario, la Cláusula Séptima del referido contrato establece que la cesión se constituye como una garantía colateral, mientras que en su Cláusula Tercera los demandados aquí apelantes reconocieron la existencia del pagaré hipotecario como garantía su obligación con el Banco Santander.
Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Primera Instancia.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General